# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENOVLE L. MALONE,<br><br>          Plaintiff,<br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>          Defendant. | CASE NO. 06-cv-02061 DMS (WMC)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Lenovle L. Malone moves for Summary Judgment challenging the Administrative Law Judge's ("ALJ") denial of her claim for Supplemental Security Income benefits under Title XVI of the Social Security Act. (Administrative Record "AR" at 98.) Defendant Michael J. Astrue, in his capacity as Commissioner of the Social Security Administration, opposes Plaintiff's motion and cross-moves for summary judgment.

Plaintiff raises two principal arguments: (1) the ALJ's finding regarding Plaintiff's lack of credibility was not supported with substantial evidence (P's Mem. of P & A in Supp. of MSJ at 3); and (2) the ALJ committed error in not giving controlling weight to the medical opinion of Plaintiff's treating physician. (Id.)

/ / /

/ / /

/ / /

# I.

# BACKGROUND

Plaintiff is a thirty-seven year old female with a successfully completed GED certificate.[1] (AR at 98, 117.) She also has special job training in cosmetology and hair design. (AR at 117.) Her prior work experience includes employment as a dayworker, housekeeper, caregiver, and janitor. (P's Mem. of P & A in Supp. of MSJ at 3; AR at 301.) She alleges "disability due to status post surgical partial resection of left pubis and left pubic tubercle and biolateral osteoarthritis in both hips, left greater than the right." (P's Mem. of P & A in Supp. of MSJ at 3.)

Plaintiff filed an application for Supplemental Security Income payments on December 13, 2003. (AR at 101.) That claim was denied both initially and on reconsideration (AR at 10.) Plaintiff then appeared and testified at a hearing on April 7, 2006. (Id.) At that hearing, the ALJ considered "whether the claimant is or has been disabled under section 1614(a)(3)(A) of the Social Security Act." (Id.)

The ALJ heard testimony from Michael S. Gurvey, M.D. (Dr. Gurvey), an impartial medical expert, and Alan E. Cummings, Ph.D. (Dr. Cummings), an impartial vocational expert. (Id.) Plaintiff also lodged several written reports by her own treating and examining physicians. The ALJ found that Plaintiff was not disabled. On February 23, 2007, Plaintiff filed this motion asking the Court to reverse the ALJ's decision. Defendant responded and cross-filed for summary judgment on March 14, 2007.

# II.

# MEDICAL HISTORY

In 1996, Plaintiff underwent extensive abdominal surgery, during which doctors removed both a desmoid tumor arising from her left ovary and part of her pelvic muscles. (AR at 192.) While Plaintiff's alleged disabilities originated with this procedure, there are no relevant medical records available to the Court.

On March 16, 2004, Plaintiff was examined by Denny H. Lee, M.D. Dr. Lee observed that

---

[1] Plaintiff's complete educational history is unclear. At page 117 of the AR, Plaintiff indicated on a Disability Report that the tenth grade is her highest level of grade school completed. However, at page 301 of the AR, Plaintiff testified that she had completed the twelfth grade.

1  Plaintiff retained full strength in all extremities with the exception of the lower left, which he rated
2  as "4/5." (AR at 195.) The doctor further noted that Plaintiff was "able to ambulate for approximately
3  15 minutes unassisted but will have significant pain and will also limp beyond that." (AR at 192.)
4  Based on these facts, Dr. Lee concluded that Plaintiff "can lift and carry 20 lbs. occasionally and 10
5  lbs. frequently. She can stand and walk for 4 hours and sit for 6 hours out of an 8-hour workday with
6  regular breaks. She has no limitations with fine or gross manipulation." (AR at 195.)

7  On April 21, 2004, Plaintiff visited Hyunsoo Kim, M.D., complaining of left hip pain. The
8  pain was subjectively categorized by Plaintiff as "10/10" and the doctor noted some difficulty in
9  Plaintiff's hip rotation. (AR at 212.) Accordingly, Dr. Kim prescribed a regiment of Tylenol #3,
10 Naprosyn, and physical therapy. (Id.)

11 On August 27, 2004, Plaintiff was examined by Sarmistha Kumar, D.O. Dr. Kumar noted "3+
12 to 4/5 strength diffusely in the left leg" and diagnosed Plaintiff's condition as "chronic pain in the left
13 hip and pelvis." (AR at 252-53.) The doctor concluded that Plaintiff had "significant impairment and
14 disability" and prescribed "Flexeril 5mg one p.o.t.i.d."[2] (AR at 253.) Dr. Kumar then prepared a
15 medical source statement, opining that Plaintiff could occasionally lift twenty pounds, frequently lift
16 ten pounds, stand and/or walk for less than two hours in an eight hour workday, sit for one hour in an
17 eight hour workday, and never climb, balance stoop, kneel, crouch, or crawl. (AR at 268-69.)

18 On February 28, 2005, Plaintiff returned to Dr. Kim, complaining of increased left hip pain.
19 Dr. Kim prescribed Vicodin and directed Plaintiff to continue her use of Flexerin. (AR at 292.)

20 On August 21, 2005, Dr. Kumar completed a physical residual functional capacity
21 questionnaire for Plaintiff. She noted that Plaintiff was having difficulty with her physical stability
22 and gait. (AR at 271.) She opined that Plaintiff was capable of low stress jobs and could sit for no
23 more than fifteen minutes at a time and stand for no more than ten minutes at a time. (AR at 272.) Dr.
24 Kumar also concluded that Plaintiff could sit or stand/walk for at least six hours in an eight hour
25 workday, but that she would need to walk for ten minutes every hour, shift positions at will, and take
26 8-10 unscheduled breaks per workday. (AR at 273.) Plaintiff also retained the capacity to occasionally

---

[2] "A usual basic dosage for an adult is 10 mg., three times per day. . .Plaintiff's prescription is below the usual dosage." (D's MSJ at 3, n.5.)

1  lift and carry fewer than 10 lbs, but could never crouch or squat. (AR at 273-74.)

## III.

## ALJ's DECISION

The ALJ reviewed reports written by the doctors listed above, the testimony of the two testifying experts, and Plaintiff's statements. The ALJ then issued a decision denying Plaintiff's benefits. In doing so, he applied the SSA-mandated five-step sequential process to evaluate Plaintiff's application for disability benefits. The five steps of the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two.
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled.
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four.
>
> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five.
>
> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled.

*Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001) (internal citations omitted). The plaintiff maintains the burden of proof for steps one through four. However, should an inquiry proceed to step five, the burden then shifts to the Commissioner. *Id.*

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. (AR at 12.) At step two, the ALJ determined that Plaintiff suffered from the following "severe impairments: status post surgical partial resection of left pubis and left pubic tubercle and bilateral osteoarthritis in both hips, left greater than the right." (Id.) At step three, the ALJ determined the impairments do not meet or medically equal one of the impairments in Appendix 1, Subpart P, Regulations No. 4. (AR at 13.)

Based on 20 C.F.R. § 416.920(e), before addressing steps four and five, the ALJ first determined Plaintiff had the following residual functional capacity:

> to occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for a total of at least two hours in an 8-hour workday with normal

> breaks; sit for a total of about six hours in an 8-hour workday with normal breaks; and occasional balancing, stooping, kneeling, crouching, and crawling, but no climbing.

(AR at 13.) This assessment was in part based upon the ALJ's finding that Dr. Kumar's medical opinions were neither persuasive nor controlling. (AR at 14.) Citing contradictions of opinion internally and with other doctors, the ALJ ruled that Dr. Kumar's assessments were not supported by substantial medical evidence in the record. (AR at 15.) The ALJ also noted that Dr. Kumar had limited interactions with Plaintiff prior to completing her evaluation, and that her report was "based solely upon [Plaintiff's] subjective complaints, as opposed to the objective evidence." (Id.)

In reference to residual functional capacity, The ALJ also found that Plaintiff's allegations regarding her limitations were not totally credible. (AR at 16.) The ALJ weighed objective medical evidence suggesting that Plaintiff was in good medical condition, and that X-rays of her left hip appeared normal. (AR at 15.) The ALJ also considered that Plaintiff had not been taking "medications at dosages commensurate with the alleged levels of pain." (Id.) Of critical importance to the ALJ's determination was that Plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AR at 16.) Further, the objective medical evidence provided no indication of an impairment that could produce the alleged disabilities, a fact strengthened by the absence of a medical opinion suggesting that Plaintiff was unable to work. (Id.)

Nevertheless, at step four the ALJ ultimately concluded that Plaintiff "is unable to perform any past relevant work." (AR at 16.) This determination resulted from the testimony of Dr. Cummings, who affirmed that "an individual is unable to perform the [Plaintiff's] past relevant work because such work is precluded by the [Plaintiff's] exertional and nonexertional limitations." (Id.)

At the final step, however, the ALJ determined that considering Plaintiff's "age, education, work experience, and residual functioning capacity," there were still a significant number of jobs available to her in the national economy. (AR at 16.) Dr. Cummings identified several thousand potential jobs that Plaintiff could perform according to the ALJ's determination of Plaintiff's residual functional capacity. Accordingly, the ALJ found that Plaintiff was not under a disability at any time through the date of his decision. (AR at 17.)

///

## IV.

## LEGAL STANDARD

Under the Social Security Act, "disability" is defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A). The impairment must be so severe that the claimant "is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A). In addition, the impairment must result "from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory techniques." 42 U.S.C. § 423(d)(3).

A court cannot set aside a denial of benefits unless the Commissioner's findings are based upon legal error or are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986); *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). It is more than a scintilla but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975).

To determine whether substantial evidence exists to support the ALJ's decision, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ. *Walker v. Matthews*, 546 F.2d 814, 818 (9th Cir. 1976). A court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). In short, a court must weigh the evidence that supports the Commissioner's conclusions and that which does not. *Martinez*, 807 F.2d at 772.

If there is substantial evidence to support the decision of the ALJ, the decision must be upheld even when there is evidence on the other side, *Hall v. Secretary*, 602 F.2d 1372, 1374 (9th Cir. 1979), and even when the evidence is susceptible to more than one rational interpretation, *Gallant v. Heckler*,

753 F.2d 1450, 1453 (9th Cir. 1984). If supported by substantial evidence, the findings of the Commissioner as to any fact will be conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981).

## V.

## DISCUSSION

Plaintiff disputes the ALJ's findings that: (1) Plaintiff's allegations were not totally credible, and (2) Dr. Kumar's medical opinions were neither persuasive nor controlling. Both of these findings referred specifically to Plaintiff's residual functional capacity, which is an essential element of the step four and five analyses. However, in spite of these claim deficiencies, the ALJ still found that Plaintiff had satisfied the requirements for advancing past step four: "[Plaintiff] is unable to perform any past relevant work." (AR at 16.) Following the precedent of *Bustamante*, 262 F.3d at 953-54, the ALJ proceeded in the analysis, where Plaintiff's claim was then denied on the grounds set forth by step five. Because step four was found in favor of Plaintiff, this Court will discuss the disputed ALJ findings in the exclusive context of step five of the SSA-mandated five-step sequential process.

### A.   Plaintiff's credibility

When weighing a claimant's credibility, the ALJ may consider factors such as "inconsistencies either in [her] testimony or between [her] testimony and [her] conduct, [her] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [she] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Evidence regarding the claimant's daily activities can be highly instructive. "[I]f, despite [her] claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The Court in *Fair* went on to conclude that "if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that *are* transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." *Id.*

In this case, when deciding that Plaintiff was capable of performing other work, the ALJ

properly found that Plaintiff lacked credibility. The testimony of Dr. Gurvey, an impartial medical expert, provided particularly substantial evidence regarding Plaintiff's symptoms. "Dr. Gurvey is a licensed orthopedic surgeon who is familiar with the Commissioner's regulations for evaluating disability." (AR at 14.) He testified that he was confident enough to "give an adequate assessment of. . .[Plaintiff's] functional capacity." (AR at 315.) Accordingly, Dr. Gurvey concluded that Plaintiff was restricted to lifting/carrying fifty pounds occasionally and twenty-five pounds frequently. (Id.) He also stated that Plaintiff could stand/walk for two to four hours per workday, sit for six hours per workday, and occasionally crawl, kneel, squat, and crouch. (AR at 316.) These observations do not align with Plaintiff's assertions of a debilitating physical condition that precludes nearly all physical activity. (AR at 308-9.) But based on Dr. Gurvey's credentials and objectivity, his expert opinion could reasonably support the ALJ's conclusion that Plaintiff's description of her symptoms lacks credibility.

Plaintiff also provided testimony to the ALJ concerning her daily activities and work experience. She mentioned that for a year she has been working twelve hours per week as an in-home caregiver. (AR at 301-2.) In this job, Plaintiff bathes patients, cleans their rooms, and occasionally assists in lifting them. (AR at 307, 310.) Plaintiff is also capable of driving a car, and shares household tasks with her three children. (AR at 303-4.) "[S]he irons, shops, cooks, cleans, [and] does laundry." (AR at 13.) In reference to these abilities, the ALJ found that "claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AR at 16.) While Plaintiff's activities are somewhat limited, they demonstrate that she is nonetheless capable of performing work, and certainly seem transferable to other potential forms of employment. Combined with Dr. Gurvey's evaluation of Plaintiff's functional capacity, this comprised substantial evidence for the ALJ to reasonably conclude that Plaintiff's allegations were not credible.

### B. Rejection of Dr. Kumar's opinions

In determining that Plaintiff was still capable of working, the ALJ refused to consider Dr. Kumar's assessment of Plaintiff's functional capacity. Plaintiff argues the ALJ's rejection of the opinion of Dr. Kumar was not supported by substantial evidence. Generally, "more weight should be

1  given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."
2  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "[I]f the treating doctor's opinion is contradicted
3  by another doctor, the Commissioner may not reject this opinion without providing specific and
4  legitimate reasons supported by substantial evidence in the record for so doing." *Id.* "The ALJ can
5  meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical
6  evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403,
7  1408 (9th Cir. 1986).

8  Here, Dr. Kumar's opinion was contradicted by the examining physician, Dr. Lee, and by the
9  testifying expert, Dr. Gurvey. The ALJ affixed little weight to Dr. Kumar's opinion for this reason,
10 as well as several others: "Dr. Kumar had only seen the claimant one time when he [sic] completed
11 the evaluation form. . .[Plaintiff's] limitations are contradicted by [Dr. Kumar's] own scant progress
12 notes. . .Dr. Kumar's opinion of resulting functional limitations is not supported by the other
13 substantial evidence of record." (AR at 14-15.)

14 The ALJ's reasons are specific, legitimate, and supported by substantial evidence. Upon *de*
15 *novo* review of the entire record, this Court notes that Dr. Kumar's August 21, 2005 residual functional
16 capacity questionnaire is both internally inconsistent and inconsistent with all other residual functional
17 capacity assessments in the record. As an initial matter, Plaintiff had indeed only been examined by
18 Dr. Kumar once, and at the time of the report's submission, this examination took place nearly a year
19 prior. In the same report, Dr. Kumar simultaneously stated that Plaintiff could sit for "less than 2
20 hours" and "at least 6 hours." (AR at 273.) This contradiction aside, she also noted that Plaintiff
21 could stand/walk for at least six hours. (Id.) These numbers strongly suggest that Plaintiff is actually
22 "able to do other work," a fact later contradicted by Dr. Kumar's other observations (e.g. the ability
23 to lift less than ten pounds occasionally). Furthermore, Dr. Kumar's conclusions contradicted those
24 made by Dr. Lee, who indicated that Plaintiff's extremities were relatively strong and her gait was
25 normal. (AR at 195.) Dr. Gurvey's impartial testimony also reached far different conclusions, opining
26 that given Plaintiff's condition, she would be capable of crouching, squatting, kneeling, crawling, and
27 lifting much more than ten pounds. (AR at 315-16). Finally, in reviewing the record this Court
28 emphasizes that Dr. Gurvey is an orthopedic specialist with expertise in cases similar to the present

(AR at 14).

These portions of the record indicate that the ALJ's decision to accord Dr. Kumar's opinions less weight due to multiple inconsistencies was supported by substantial evidence.

## VI.

## CONCLUSION

Following a *de novo* review of the record, this Court finds that the ALJ's decision is free of legal error and supported by substantial evidence. Accordingly, Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

DATED: December 6, 2007

_____
HON. DANA M. SABRAW
United States District Judge